MARYRUTH PARKHURST, APPELLEE, V. GARNETT S.
PARKHURST, APPELLANT.
171 N. W. 2d 243

Filed October 17, 1969.    No. 37240.

Henry E. Stevens, for appellant.

Yost & Yost and Nicholas J. Lamme, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action for divorce brought by Maryruth Parkhurst against Garnett S. Parkhurst on the grounds of extreme cruelty. The trial court granted plaintiff an absolute divorce and divided the property of the parties, subject to encumbrances. Defendant perfected this appeal.

The parties were married May 18, 1943, and have one son who has attained his majority. The marital home of the parties was in Fremont, Nebraska. Plaintiff has been

gainfully employed during the entire marriage except for the period of her pregnancy. For the last several years she has been employed at the Hormel Packing Company. Defendant has been employed or in business during the marriage except for a period of less than a year. For the last 5 years he has been operating a laundromat and dry cleaning business in Wahoo, Nebraska. The downpayment for the purchase of the business was made with plaintiff's inheritance from her mother.

We limit our consideration to the assignments of error covering sufficiency of the evidence, corroboration, and condonation. Defendant also attacked the division of the property in his brief, but neglected to include it in his assignments of error. It will not be considered herein in accordance with Rule 8 a 2 (3), Revised Rules of the Supreme Court, 1967, which so far as material herein is as follows: "Assignments of error relied upon for reversal and intended to be urged in the brief shall be separately numbered and paragraphed, bearing in mind that consideration of the cause will be limited to errors assigned and discussed."

Plaintiff testified that defendant had a violent temper and continually struck her, the last occasion being when he broke some furniture and dishes during the evening meal about a week before the separation. She also testified that she went to Columbus, Nebraska, the last Friday in April to check on defendant's alleged girl friend, and found defendant's car parked in front of the house. She testified defendant was in the house approximately 2½ hours. While defendant insisted it was a business call and denied any impropriety on this occasion, there is a modicum of corroboration of plaintiff's testimony in the defendant's version of the event. Plaintiff returned to Fremont, picked up some clothes, and left the home of the parties. She remained away for 3 weeks and when she returned she refused to live with the defendant.

After the divorce action was filed, defendant called her on the telephone. Her sister, who was listening on an extension telephone, testified to the conversation. The sister testified defendant wanted to know on what grounds plaintiff was seeking a divorce. Plaintiff told him that her main objection was his striking her, his violent temper, and, of course, his running around with other women. The sister testified that defendant, relative to striking plaintiff, said: " 'How are you going to prove that. No one saw it.' "

Plaintiff had a restraining order issued against the defendant, but the testimony is undisputed that he followed her in his car wherever she went, and on one occasion the Omaha police had to escort her to her sister's-in-law home in Omaha.

After the filing of the petition, plaintiff's home was entered and the title to the defendant's car was taken, along with some letters to the defendant from other women which plaintiff had found. There was some money in the house on this occasion but only one-half of it was gone. Plaintiff parked her car during the day on the Hormel parking lot. On one occasion while it was parked there, sugar was put in the motor. Defendant had been seen in the vicinity of the car on the day of this occurrence.

The evidence in this case, although somewhat marginal, is sufficiently corroborated to sustain a finding of extreme cruelty on the part of the defendant. In Sewell v. Sewell, 160 Neb. 173, 69 N. W. 2d 549, we held: "A rule by which to measure the exact amount or degree of corroboration required in a divorce case has not been formulated. The sufficiency or insufficiency of corroboration must be determined from the facts and circumstances of each case."

On the issue of condonation after the filing of the petition herein, defendant's evidence strains credulity. The parties were living apart and defendant admits plaintiff refused to listen to his pleas for reconciliation. De-

fendant testified to cohabitation on several occasions subsequent to the filing of the petition. Plaintiff vehemently denied any cohabitation after the Columbus event. The trial court in its determination accepted plaintiff's version of the evidence and granted the divorce.

Actions in equity on appeal to this court are triable de novo, subject, however, to the rule that when credible evidence on material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. Schalk v. Schalk, 168 Neb. 229, 95 N. W. 2d 545.

The judgment of the district court is affirmed.

AFFIRMED.